1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   DALLAS RANDOLPH WHITE,                No.  1:16-cv-01436-DAD-JLT (HC)

12              Petitioner,               **FINDINGS AND RECOMMENDATION
                                          TO DENY PETITION FOR WRIT OF**
13        v.                              **HABEAS CORPUS**

14   SCOTT FRAUENHEIM, Warden,            **[TWENTY-ONE DAY OBJECTION
                                          DEADLINE]**
15              Respondent.

16

17        Petitioner is currently serving an indeterminate sentence of 103 years-to-life for multiple

18   sex offenses committed against a child under 10 years old.  He has filed the instant habeas action

19   challenging his conviction and sentence.  As discussed below, the Court finds that the state court

20   rejections of his claims were not contrary to or an unreasonable application of clearly established

21   Supreme Court precedent and recommends the petition be **DENIED.**

22   **I.        PROCEDURAL HISTORY**

23        On June 18, 2013, Petitioner was convicted in the Stanislaus County Superior Court of:

24   one count of engaging in sexual intercourse or sodomy with a child 10 years of age or younger

25   (Cal. Penal Cod § 288.7(a)); one count of engaging in oral copulation or sexual penetration with a

26   child 10 years of age or younger (Cal. Penal Code § 288.7(b)); one count of oral copulation with a

27   child under 14 years of age (Cal. Penal Code § 288a(c)(1)); one count of sexual penetration with a

28   person under 14 years of age (Cal. Penal Code § 289(j)); and one count of committing a lewd or

                                               1

1    lascivious act upon a child under 14 years of age (Cal. Penal Code § 288(a)).  People v. White,

2    No. F067535, 2015 WL 1261445, at *1 (Cal. Ct. App. Mar. 18, 2015), *review denied* (June 24,

3    2015).  In addition, Petitioner admitted he had suffered a prior strike for robbery and had served

4    two prison terms.  Id.  Petitioner was sentenced to an aggregate term of 103 years-to-life in state

5    prison.  Id.

6         Petitioner appealed to the California Court of Appeal, Fifth Appellate District (hereinafter

7    "Fifth DCA").  On March 18, 2015, aside from corrections to the abstracts concerning certain

8    terminology, the judgment was affirmed.  Id.  Petitioner filed a petition for review in the

9    California Supreme Court, which was summarily denied on June 24, 2015.  Id.

10        On September 19, 2016, Petitioner filed the instant petition for writ of habeas corpus in

11   this Court.  (Doc. No. 1.)  Respondent filed an answer on February 3, 2017.  (Doc. No. 20.)

12   Petitioner did not file a traverse.

13   **II.    FACTUAL BACKGROUND**

14        The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1] :

15        At trial, Jane Doe's mother (Mother) testified she was married to defendant's son,
16        but her oldest child, Jane Doe, had a different father. According to Mother,
         defendant lived in her home from June 2009 until June 2011. On June 11, 2011,
17        Mother observed that Jane's vaginal area was red and irritated. Despite
         questioning, Jane did not reveal the cause of the redness or irritation. Mother
18        became concerned after observing the vaginal irritation as Jane had been "acting
         funny" in the preceding weeks. Specifically, Mother noted Jane had recently begun
19        sleeping in the hallway or alongside Mother's bed, and she also had been
         demonstrating inappropriate sexual vocabulary. Mother also recalled that earlier
20        that day she had walked in on defendant and Jane together, and Jane fled the room,
         claiming to have defecated in her pants, while defendant's suspenders were loose
21        and his pubic hair was exposed.

22        The next day, Jane informed Mother that defendant had touched her vagina. At
         that time, Mother removed her children from the home, contacted the police, and
23        took Jane to the hospital to be evaluated. Upon returning home, Mother collected
         from the laundry pile a pair of underwear Jane had been wearing the previous day
24        and placed them in a Ziploc bag. Mother later turned that bag over to the police on
         June 21, 2011, ten days after first contacting the police.

25        Mother testified she had not previously observed any cuts or abrasions on Jane's
         vagina, but when she came home on June 11, 2011, the same day she later noticed
26        the redness and irritation on Jane's vagina, she found defendant and Jane together.

27   ──────────────
     [1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).
28   Therefore, the Court will rely on the Fifth DCA's summary of the facts.  Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

She testified Jane fled the room, claiming to have defecated in her pants, and defendant's suspenders were loose and his pubic hair was exposed.

Jane testified defendant had sexually abused her on several occasions while she was in first grade. Specifically, defendant had touched her breasts, repeatedly penetrated her vagina with his fingers and penis, placed his mouth on her vagina, inserted his penis into her rectum, and made Jane perform oral sex on him. Jane observed "clear stuff" coming out of defendant's penis, and defendant told her not to tell anyone.

Joanna Franks, a registered nurse, conducted the forensic "Sexual Assault Response Team" (SART) exam on Jane and noted bruising in the area between Jane's buttock and thigh, as well as redness and a possible healing bruise on Jane's vaginal opening. Franks did not find evidence of bodily fluids or any injuries to Jane's hymen or rectum. According to Franks, however, past penetrative sex would not always cause visible damage to those areas as they were capable of healing rapidly. Franks acknowledged she could not definitively conclude the injuries present on Jane's exam were caused by sexual abuse rather than a fall or general irritation.

The underwear provided to the police by Mother tested positive for seminal fluid and spermatozoa, but there was insufficient DNA in the sample to determine the source of the semen.

White, 2015 WL 1261445, at *1–2.

## III.    DISCUSSION

### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

///

3

B.      Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Cullen v. Pinholster, 563 U.S. 170, 203 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997).  A state court's

4

1  factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable

2  among reasonable jurists."  Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-

3  1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

4       To determine whether habeas relief is available under § 2254(d), the federal court looks to

5  the last reasoned state court decision as the basis of the state court's decision.  See Ylst v.

6  Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

7  2004).  "[A]lthough we independently review the record, we still defer to the state court's

8  ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

9       The prejudicial impact of any constitutional error is assessed by asking whether the error

10  had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

11  Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)

12  (holding that the Brecht standard applies whether or not the state court recognized the error and

13  reviewed it for harmlessness).

14      C.    Review of Claims

15       Petitioner raises the following claims challenging his conviction and sentence: 1) The trial

16  court erred in admitting the underwear and related biological evidence; 2) The trial court erred in

17  admitting expert testimony; 3) The presence of a support person for the victim absent any

18  particularized showing of need violated Petitioner's Sixth Amendment right to confrontation and

19  due process right to a fair trial; 4) The trial court erred in failing to sua sponte instruct the jury

20  concerning Petitioner's admissions; 5) The reasonable doubt instructions were erroneous; 6) The

21  cumulative effect of the errors deprived Petitioner of due process and a fair trial; and 7) The term

22  of 103 years-to-life constituted cruel and unusual punishment.

23      1.    Admission of Evidence

24       Petitioner claims that the trial court erred by admitting the underwear and related

25  biological evidence in the case.  He argues that the evidence was lacking in foundation and

26  relevance, and at a minimum, was grossly and unduly prejudicial, thereby denying him a fair trial.

27      a.  State Court Decision

28       Petitioner presented this claim on appeal.  In the last reasoned decision, the Fifth DCA

denied the claim as follows:

> Prior to trial, defense counsel moved to exclude Jane Doe's underwear and the forensic tests performed on them from evidence. Defendant claimed the evidence was more prejudicial than probative, as the source of the semen could not be determined, ten days passed before Mother turned the underwear over to police, and a recent study had shown semen could be transferred between articles of clothing in a washing machine. Following a hearing, the trial court denied defendant's motion, finding the evidence was more probative than prejudicial, and defendant's arguments for exclusion went to the weight of the evidence rather than its admissibility.

> On appeal, defendant renews his objection to the admission into evidence of Jane's underwear and related forensic tests, again asserting the evidence was more prejudicial than probative. We disagree. We review a trial court's decision to admit evidence for an abuse of discretion. (*People v. Avitia* (2005) 127 Cal.App.4th 185, 193.) An abuse of discretion occurs when a court exercises its discretion in an "arbitrary, capricious, or patently absurd manner that result[s] in a miscarriage of justice." (*Ibid*.)

> Under Evidence Code section 352, a trial court has the discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will ... create substantial danger of undue prejudice." While the admission of semen-stained underwear was certainly damaging to defendant's case, "'[i]n applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging."'" [Citation.]" (*People v. Karis* (1988) 46 Cal.3d 612, 638, quoting *People v. Yu* (1983) 143 Cal.App.3d 358, 377.) Instead, evidence is only unduly prejudicial if it "'uniquely tends to evoke an emotional bias against defendant as an individual and ... has very little effect on the issues.'" (*People v. Bolin* (1998) 18 Cal.4th 297, 320, quoting *People v. Yu, supra*, at p. 377.)

> The forensic testing in this case had a profound effect on the issues, even in the absence of definitive proof that the semen came from defendant. Jane Doe testified defendant sexually assaulted her and ejaculated in her presence, and the presence of semen on Jane's underwear tended to corroborate those claims. Such corroborating physical evidence has obvious probative value. (*People v. Clark* (2011) 52 Cal.4th 856, 923 ["Here, notwithstanding the expert's inability to type the semen stain, the evidence tended to show defendant's guilt of attempted rape"].)

> Moreover, that probative quality was not outweighed by any prejudicial effect as contemplated by Evidence Code section 352. That section "'uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 958.) The physical evidence in this case did not run the risk of causing the jury to prejudice defendant on "extraneous" factors, as it directly related to actual crimes for which defendant stood accused.

> Further, defendant's repeated assertion that the semen could have been transferred in the washing machine does nothing to decrease the probative value of the evidence in question. At trial, expert testimony established the underwear had not been laundered, and it tested positive for not only spermatozoa but also seminal fluid, which cannot be transferred by the laundering process.

Likewise, neither the delay in turning the underwear over to police nor the fact there was insufficient DNA evidence to conclusively determine the source of the semen on the underwear renders the evidence in question inadmissible. The trial court correctly noted those facts go to the weight of the evidence, not its admissibility. (*People v. Clark, supra,* 52 Cal.4th at p. 923 ["Defendant's argument goes to the weight, not the admissibility, of the semen stain evidence"].) In order to be admissible, evidence need only be relevant, not beyond reproach. As the evidence in question was obviously relevant to the primary question in this case, we find the trial court did not abuse its discretion by denying defendant's motion to exclude the evidence. (*Ibid.* [no abuse of discretion in admitting evidence of semen stain on defendant's boxer shorts in attempted rape prosecution even though source of stain could not be scientifically established].)

White, 2015 WL 1261445, at *2–3.

   *b.   Legal Standard and Analysis*

A federal court in a habeas proceeding does not review questions of state evidence law. Our inquiry is limited to whether the evidence ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  With respect to the admission of evidence, there is no Supreme Court precedent governing a court's discretionary decision to admit evidence as a violation of due process.  In Holley v. Yarborough, the Ninth Circuit stated:

Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In cases where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable. Musladin, 549 U.S. at 77, 127 S.Ct. 649.

The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see Williams, 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." Musladin, 549 U.S. at 77, 127 S.Ct. 649. Under the strict standards of AEDPA, we are therefore without power to issue the writ . . . .

Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); see Moses v. Payne, 555 F.3d 742, 760 (9th Cir. 2008) (holding that trial court did not abuse its discretion in excluding expert testimony "[b]ecause the Supreme Court's precedents do not establish a principle for evaluating discretionary decisions to exclude the kind of evidence at issue here").  Since there is no clearly

7

1  established Supreme Court precedent governing a trial court's discretionary decision to admit

2  evidence as a violation of due process, habeas relief is foreclosed.   Id.  Therefore, Petitioner

3  cannot demonstrate that the state court decision was contrary to, or involved an unreasonable

4  application of, clearly established federal law.  See 28 U.S.C. § 2254(d).

5        2.       Admission of Expert Testimony

6        Petitioner alleges that the trial court erroneously admitted the Sexual Assault Response

7  Team nurse's testimony concerning healing bruises and wound healing issues.  He claims the

8  SART nurse was not an expert and the admission of her testimony was inflammatory and

9  authoritative-sounding, as well as unreliable, irrelevant and unfounded, thereby denying him due

10  process and a fair trial.

11        *a.  State Court Decision*

12        The Fifth DCA rejected the claim as follows:

13        Prior to trial, the People filed a motion naming SART nurse Franks as an expert
        witness. In response, defendant filed a motion to exclude any testimony by Franks
14        relating "to any medical diagnosis, or conclusion on the condition of [Jane Doe]'s
        hymen" due to Franks' lack of forensic expertise. Following a hearing on the
15        motion, the trial court ruled Franks could testify to what she saw and did during
        the SART exam, but declined to qualify her as an expert prior to voir dire.
16
        At trial, the People called Franks as a witness and, during voir dire, she testified
17        she had been a registered nurse since 2007, had been trained in the collection of
        forensic evidence in sexual assault cases, and had conducted ten to 20 SART
18        examinations on children under the age of ten. She acknowledged, however, that
        she was not trained to offer any diagnosis. Franks further testified that, as part of a
19        three-day training course, she had received training on human genitalia and
        locating genital injuries. At the conclusion of voir dire, the trial court found Franks
20        had knowledge of genital injuries exceeding that of the average person and
        qualified her to give opinion evidence regarding her findings from Jane Doe's
21        SART exam.

22        On appeal, defendant argues he was prejudiced by improper admission of expert
        testimony regarding Jane's SART examination. We disagree. We review the
23        admission of expert witness testimony under an abuse of discretion standard.
        (*People v. Kovacich* (2011) 201 Cal.App.4th 863, 902.)
24
        Expert opinion testimony is admissible when it "[r]elate[s] to a subject that is
25        sufficiently beyond common experience that the opinion of an expert would assist
        the trier of fact." (Evid.Code, § 801, subd. (a).) "A person is qualified to testify as
26        an expert if he has special knowledge, skill, experience, training, or education
        sufficient to qualify him as an expert on the subject to which his testimony
27        relates." (Evid.Code, § 720, subd. (a).)

28        Defendant argues Franks was not qualified to testify she documented a "possible"

8

healing bruise during Jane Doe's SART exam. As Franks' position as a SART nurse entails the documentation of injuries, and she did in fact document the area of possible bruising, defendant's argument is without merit. The case cited by defendant does not support his contention. Instead, it supports our conclusion there was no error in permitting Franks to testify about a subject in her specific area of training and duties as a SART examiner. (See *People v. Hogan* (1982) 31 Cal.3d 815, 852 ["the qualifications of an expert must be related to the particular subject upon which he is giving expert testimony"].) In light of Franks' education, training, and practical experience (noted above and below), the trial court did not abuse its discretion by finding Franks qualified to testify about possible injuries she documented during her examination.

Defendant also alleges Franks lacked sufficient expertise to offer opinion evidence concerning the absence of documented injuries to Jane Doe's hymen and rectum. Specifically, defendant objects to Franks' testimony that a finger or penis could be inserted into a vagina or rectum without leaving lasting damage, as an estrogenized hymen was capable of repairing itself and rectal tissue heals very rapidly. This contention must also be rejected.

Because of the specialized knowledge involved, the subject of genital trauma is certainly a subject "that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid.Code, § 801, subd. (a).) Further, Franks testified she had training and several years of experience as a registered nurse, as well as additional training as a forensic examiner and experience in conducting numerous sexual assault examinations on children under the age of ten. Franks also testified she had undergone specific training on recognizing genital injuries, including injuries to the hymen.

> "[T]he decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (*People v. Cole* (1956) 47 Cal.2d 99, 103.)

Given Franks' demonstration of her education, training, and practical experience in the areas of human health, forensic examination, and sexual assault, it was not an abuse of discretion for the trial court to conclude she could reach conclusions on the subject of sexual assault injuries more intelligently than a person of ordinary education. Indeed, this fact was evidenced at trial where defense counsel repeatedly sought to appeal to the common-sense notion that sexual intercourse between an adult and a child leaves lasting and obvious trauma, and Franks' expert testimony contradicted that notion.

Further, while defendant's brief on appeal seeks to minimize the extent of Franks' training and experience, "[w]hen a preliminary showing is made that the proposed witness has sufficient knowledge to qualify as an expert under the Evidence Code, questions about the depth or scope of his or her knowledge or experience go to the weight, not the admissibility, of the witness's testimony. [Citation.]" (*People v. Jones* (2013) 57 Cal.4th 899, 949–950.) Defendant thoroughly cross-examined Franks as to the depth of her knowledge and experience and was free to call his own expert witness if he so chose. Acceptance of Franks as an expert and permitting her testimony regarding injuries, bruises, and their ability to heal was within the court's broad discretion. We find no manifest abuse of that discretion. (*Ibid.*)

9

1    <u>White</u>, 2015 WL 1261445, at *3–5.

2         *b.  Legal Standard and Analysis*

3         The same standard set forth above applies here.  For the same reasons in Ground One, this

4    claim must also be rejected.  <u>See</u> <u>Moses v. Payne</u>, 555 F.3d 742, 760 (9th Cir. 2008) (holding that

5    trial court did not abuse its discretion in excluding expert testimony "[b]ecause the Supreme

6    Court's precedents do not establish a principle for evaluating discretionary decisions to exclude

7    the kind of evidence at issue here").

8         In addition, the state court determined that the admission of the evidence was proper under

9    state law.  "[A] state court's interpretation of state law, including one announced on direct appeal

10   of the challenged conviction, binds a federal court sitting in habeas corpus."  <u>Bradshaw v. Richey</u>,

11   546 U.S. 74, 76 (2005).

12        3.    <u>Support Person</u>

13        Next, Petitioner claims that he was denied his Sixth Amendment right to confrontation

14   and his due process right to a fair trial when the trial court permitted a support person for the

15   victim without any particularized showing of need.

16        *a.  State Court Decision*

17        The Fifth DCA rejected the claim as follows:

18        Defendant contends the trial court erred by permitting Mother to serve as a support
19        person during her daughter's testimony. This contention is summarily rejected
          under the rule of forfeiture because defendant failed to object to this procedure at
20        trial. (*People v. Myles* (2012) 53 Cal.4th 1181, 1214; *People v. Stevens* (2009) 47
          Cal.4th 625, 641.) In any event, we disagree that the trial court committed error or
21        that trial counsel's failure to object caused defendant any prejudice.

22        Under section 868.5, some prosecution witnesses are entitled to the presence of
          two support persons, one who may accompany the witness to the witness stand. (§
23        868.5, subd. (a).) If a person chosen to be a support person is also a prosecuting
          witness, the prosecution must show that "the person's attendance is both desired by
24        the prosecuting witness for support and will be helpful to the prosecuting witness."
          (§ 868.5, subd. (b).) If that showing is made, the court must grant the request
25        unless it is established "that the support person's attendance during the testimony
          of the prosecuting witness would pose a substantial risk of influencing or affecting
26        the content of that testimony." (*Ibid.*) A support person who is also acting as a
          witness must testify before and out of the presence of the witness who is to be
27        supported. (§ 868.5, subd. (c).)

28        In the instant case, the People informed the trial court that Mother would be
          serving as a support person for Jane Doe and that Mother's testimony would be

10

given first, as required by section 868.5, subdivision (c). The People made no special offer of proof showing the necessity of a support person, but defense counsel offered no objection and the trial court permitted Mother to sit behind Jane on the stand and serve as her support person.

Citing *People v. Adams* (1993) 19 Cal.App.4th 412, defendant argues an evidentiary hearing to establish the necessity of a support person is required before a trial court can approve the use of the support person. *Adams*, however, based its holding on a pair of cases dealing with child witnesses who were not required to face the defendants at trial. (*Id*. at pp. 442–444.) In the first, *Maryland v. Craig* (1990) 497 U.S. 836, child witnesses were permitted to testify via closed circuit television, while in the second, *Coy v. Iowa* (1988) 487 U.S. 1012, a pair of child witnesses were permitted to testify from behind a screen.

While *Craig* and *Coy* required an evidentiary hearing to protect the defendants' rights to confront their accusers face-to-face, *Adams* sought to extend those protections to a witness's use of a support person under section 868.5. That extension was criticized by the First Appellate District in *People v. Lord* (1994) 30 Cal.App.4th 1718, 1721–1722, where the court found the need for a full evidentiary hearing was "debatable," as the only showing required under section 868.5 was that the support person was desired and would be helpful. (See § 868.5, subd. (b).) The First District further held that "[i]n the case of a molested six-year-old victim, it is almost given that [a] support person's presence is desired and would be helpful, and the statutory showing will be perfunctory." (*People v. Lord, supra*, at p. 1722.)

Given the express language of section 868.5, we see no reason to adopt the expansive holding in *Adams* in favor of the more statutorily based holding in *Lord*. Section 868.5, subdivision (b) does not require an evidentiary hearing to establish the necessity of the support person; it only requires a showing the witness desires the support person and the support person would be helpful. While the People did not make any express showing to this effect at trial, we agree with the sentiment in *Lord* and find in cases of child sexual abuse, a showing that a support person's presence is desired and helpful is essentially "perfunctory" and can be sufficiently established by the request itself.

Even if we were to conclude the trial court erred by failing to make a specific finding that a support person for Jane Doe was desired and necessary, and that trial counsel was ineffective for failing to object, any such error would be harmless. Defendant has failed to make any showing that, had the trial court made a case-specific finding on the desirability and helpfulness of a support person, it would have denied Jane the use of a support person. "To establish entitlement to relief for ineffective assistance of counsel the burden is on the defendant to show ... it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Lewis* (1990) 50 Cal.3d 262, 288.) As defendant has not, and cannot, establish he was prejudiced in anyway by the trial court's failure to inquire into the desirability and helpfulness of a support person for an eight-year-old sexual abuse victim, we find any error harmless.

Defendant argues the trial court erred by failing to instruct the jury that evidence of a defendant's oral admission should be viewed with caution, and a defendant cannot be convicted solely on the basis of an out-of-court statement. We agree, but find the errors harmless.

White, 2015 WL 1261445, at *5–6.

11

*b. Procedural Default*

As an initial matter, Respondent contends that the claim is procedurally barred because no contemporaneous objection was made at trial.  The Court agrees.

A federal court will not review a claim of federal constitutional error raised by a state habeas petitioner if the state court determination of the same issue "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).  This rule also applies when the state court's determination is based on the petitioner's failure to comply with procedural requirements, so long as the procedural rule is an adequate and independent basis for the denial of relief. Id. at 730.  For the bar to be "adequate," it must be "clear, consistently applied, and well-established at the time of the [ ] purported default." Fields v. Calderon, 125 F.3d 757, 762 (9th Cir. 1997).  For the bar to be "independent," it must not be "interwoven with the federal law." Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).  If an issue is procedurally defaulted, a federal court may not consider it unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749-50.

In Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002), the Ninth Circuit held that California's contemporaneous objection doctrine is clear, well-established, and has been consistently applied when a party has failed to make any objection to the admission of evidence. In Vansickel v. White, 166 F.3d 953 (9th Cir. 1999), the Ninth Circuit held that the contemporaneous objection bar is an adequate and independent state procedural rule.  In this case, Petitioner did not object to the procedure at trial.  Further, Petitioner has not demonstrated cause for the default or actual prejudice resulting therefrom.  Thus, the claim is procedurally defaulted and should be dismissed.

*c. Legal Standard*

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" Davis v. Alaska, 415 U.S. 308, 315 (1974) (citation omitted).  "'The main and essential purpose of confrontation is *to*

1   *secure for the opponent the opportunity of cross-examination*.'"   Id. at 315-16 (citation omitted,

2   emphasis in original).  On the other hand, the Confrontation Clause does not prevent a trial judge

3   from imposing "reasonable limits on such cross-examination based on concerns about, among

4   other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation

5   that is repetitive or only marginally relevant."  Delaware v. Van Arsdall, 475 U.S. 673, 679

6   (1986).  "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination,

7   not cross-examination that is effective in whatever way, and to whatever extent the defense might

8   wish."  Id. at 678-79 (citation and quotation marks omitted, emphasis in original).

9           *d.   Analysis*

10          Respondent correctly notes that "[t]he Supreme Court has not yet addressed the issue of a

11   support person for a child witness under Cal. Penal Code § 868.5."  Reynolds v. Yates, 2010 WL

12   2757207, at *9 (C.D. Cal. Mar. 15, 2010), *report and recommendation adopted*, 2010 WL

13   2744473 (C.D. Cal. July 6, 2010).  With no Supreme Court holding addressing the particular

14   issue here, it cannot be said that the state court unreasonably applied clearly established Federal

15   law.  § 2254(d)(1); Carey v. Musladin, 549 U.S. 70, 77 (2006).

16          Nevertheless, Petitioner claims that his rights under the Confrontation Clause were

17   violated under the Supreme Court precedent in Maryland v. Craig, 497 U.S. 836, 845 (1990).

18   The principles set forth in Craig do not aid Petitioner's argument.  In Craig, the defendant was

19   charged with various sexual offenses against a 6-year-old victim, and the victim was permitted to

20   testify by one-way closed circuit television with the victim and defendant unable to see each

21   other.  Id. at 840, 842.  The Court upheld the procedure under the Confrontation Clause, because

22   the "procedure preserves all of the other elements of the confrontation right: The child witness

23   must be competent to testify and must testify under oath; the defendant retains full opportunity for

24   contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit

25   by video monitor) the demeanor (and body) of the witness as he or she testifies."  Id. at 851-52.

26   In this case, the victim was present at trial and testified in court under oath.  The victim was

27   cross-examined and re-crossed.  The judge, jury, and defendant were able to view her demeanor

28   as she testified.  Therefore, Petitioner fails to show how the state court procedure was contrary to

13

1  or an unreasonable application of the principles set forth in Craig. The claim should be denied.

2      4.    Failure to Instruct

3      Petitioner alleges that the court prejudicially erred in failing to instruct *sua sponte*

4  regarding his admissions, including an instruction which informed the jury that it must view

5  Petitioner's oral admissions with caution.

6      *a. State Court Decision*

7      The Fifth DCA rejected the claim as follows:

8  "It is well established that the trial court must instruct the jury on its own motion
9  that evidence of a defendant's unrecorded, out-of-court oral admissions should be
   viewed with caution. [Citations.]" (*People v. McKinnon* (2011) 52 Cal.4th 610,
10  679.) Jury instructions concerning such out-of-court admissions are found in
   CALCRIM No. 358, which reads as follows:

11  "You have heard evidence that the defendant made [an] oral or written
12  statement[s] (before the trial/while the court was not in session). You must
   decide whether the defendant made any (such/of these) statement[s], in
   whole or in part. If you decide that the defendant made such [a]
13  statement[s], consider the statement[s], along with all the other evidence, in
   reaching your verdict. It is up to you to decide how much importance to
14  give to the statement[s]. [¶] [Consider with caution any statement made by
   (the/a) defendant tending to show (his/her) guilt unless the statement was
15  written or otherwise recorded.]"

16  At trial, Jane Doe testified defendant told her "not to tell anyone" about the sexual
   abuse. This was obviously evidence of an unrecorded, out-of-court statement
17  tending to show defendant's guilt and, thus, required the trial court to instruct the
   jury with the language of CALCRIM No. 358. Nevertheless, the failure to issue
18  such an instruction only requires reversal when "it is reasonably probable the jury
   would have reached a result more favorable to defendant had the instruction been
19  given. [Citations.]" (*People v. Carpenter* (1997) 15 Cal.4th 312, 393.)

20  As cautionary instructions are intended to help the jury to determine whether an
   oral admission was in fact made, "courts examining the prejudice in failing to give
21  the instruction examine the record to see if there was any conflict in the evidence
   about the exact words used, their meaning, or whether the admissions were
22  repeated accurately. [Citations.]" (*People v. Dickey* (2005) 35 Cal.4th 884, 905,
   quoting *People v. Pensinger* (1991) 52 Cal.3d 1210, 1268.) "[Our Supreme Court]
23  has held to be harmless the erroneous omission of the cautionary language when,
   in the absence of such conflict, a defendant simply denies that he made the
24  statements." (*People v. McKinnon, supra,* 52 Cal.4th at p. 680.) Appropriately
   instructing a jury on assessing the credibility of witnesses also renders the failure
25  to issue a cautionary instruction on oral admissions harmless. (*Ibid.*)

26  In the instant case, there was no conflict as to defendant's exact words used, their
   meaning, or whether they were repeated accurately. Instead, the defense asserted
27  Jane Doe was simply fabricating the allegations. Further, the trial court
   appropriately instructed the jury with CALCRIM Nos. 226 and 302 on assessing
28  the credibility of witnesses. Therefore, the trial court's failure to instruct the jury

with CALCRIM No. 358 was harmless.

A similar analysis applies to defendant's claim that the trial court erred by failing to instruct the jury with the language of CALCRIM No. 359, which states, in relevant part:

> "The defendant may not be convicted of any crime based on (his/her) out-of-court statement[s] alone. You may rely on the defendant's out-of-court statements to convict (him/her) only if you first conclude that other evidence shows that the charged crime [or a lesser included offense] was committed. [¶] That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed."

As this instruction is required whenever a defendant's extrajudicial statements form part of the prosecution's evidence, the trial court erred by failing to provide it to the jury in this case. (*People v. Howk* (1961) 56 Cal.2d 687, 706.) Failure to issue jury instructions to this effect is harmless, however, "if there appears no reasonable probability the jury would have reached a result more favorable to the defendant had the instruction been given." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1181.)

While the trial court failed to instruct the jury it could not convict defendant without evidence—other than defendant's out-of-court statements—of a crime having been committed, there was significant evidence from which the jury could conclude a crime took place. Both Mother and Franks testified to seeing bruising and redness on Jane Doe's genital area, Jane testified in detail about several acts of sexual abuse at the hands of defendant, and forensic testimony established Jane's underwear had tested positive for semen. This evidence, and not Jane's testimony that defendant told her not to tell anyone about the abuse, formed the backbone of the People's case against defendant. As such, there is no reasonable probability that, had the jury been instructed with CALCRIM No. 359, defendant would have obtained a different result. No reversal is required.

White, 2015 WL 1261445, at *6–7.

   *b.   Legal Standard*

Initially, the Court notes that a claim that a jury instruction violated state law is not cognizable on federal habeas review.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S.

15

at 72.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988); see, e.g., Middleton v. McNeil, 541 U.S. 433, 434–35 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law).  Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  Henderson, 431 U.S. at 155.

In addition, a habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice."  Id. (citation omitted); see Calderon v. Coleman, 525 U.S. 141, 146–47 (1998).

     *c.  Analysis*

In this case, the state court determined that the trial court erred in failing to instruct the jury with CALCRIM Nos. 358 and 359; however, the court determined that the error was harmless.  Petitioner does not point to any Supreme Court authority which would require such instructions under these circumstances.  He did not request the instructions at trial; he was available to testify concerning his oral admissions; and the trial court determined that the statements were admissible.  Absent any Supreme Court authority requiring such instructions, Petitioner fails to demonstrate that the state court determination was contrary to or an unreasonable application of Supreme Court precedent.

Moreover, Petitioner fails to demonstrate that the state court determination of harmless error was unreasonable.  Had the trial court instructed the jury that Petitioner's oral admissions must be viewed with caution, and that he could not be convicted by evidence of his admissions alone, there is no question the result would have been the same.  There was overwhelming

1  evidence of the crime, such as the mother and father having witnessed bruising and redness to the

2  victim's genital area, the victim's detailed testimony of the abuse inflicted by Petitioner, and

3  forensic evidence showing the victim's underwear tested positive for semen.  The claim should be

4  rejected.

5          5.      <u>Instructional Error</u>

6         Petitioner next claims the trial court erred by instructing the jury that proof beyond a

7  reasonable doubt meant an "abiding conviction" in the truth of the charges.  He also claims that

8  the instructions erroneously told the jurors that they must decide what the facts are based solely

9  on the evidence presented in court.  He contends the instructions wrongly told the jurors that

10  reasonable doubt must arise from evidence presented at trial.  Such an instruction, Petitioner

11  argues, did not allow the jurors to find reasonable doubt based on the *absence* of evidence or

12  conflicts therein.

13      *a.  State Court Decision*

14      The Fifth DCA denied the claim as follows:

15  
16          Defendant argues on appeal that the trial court's instructions to the jury on the
standard of proof were defective. We disagree. "In determining the correctness of
jury instructions, we consider the instructions as a whole. [Citation.] An
17  instruction can only be found to be ambiguous or misleading if, in the context of
the entire charge, there is a reasonable likelihood that the jury misconstrued or
misapplied its words. [Citation.]" (*People v. Campos* (2007) 156 Cal.App.4th
18  1228, 1237.)

19          Defendant alleges two errors in the trial court's instructions. First, he claims the
trial court's use of jury instructions compelling the jury to find the facts of the case
20  based solely on evidence presented at trial was erroneous, as it precluded the jury
from finding facts based on a lack of evidence. In so arguing, defendant challenges
21  the validity of language found in CALCRIM No. 220, which instructs jurors they
"must impartially compare and consider all the evidence that was received
22  throughout the entire trial." To the extent they rely on similar language, defendant
also challenges the trial court's use of CALCRIM Nos. 200, 222, 223, and 3550.
23  

24          An identical argument was addressed and rejected in *People v. Campos, supra*,
156 Cal.App.4th at page 1238 where the Second District Court of Appeal held:

25             "Reasonable doubt may arise from the lack of evidence at trial as well as
from the evidence presented. [Citation.] The plain language of CALCRIM
26  No. 220 does not instruct otherwise. The only reasonable understanding of
the language, '[u]nless the evidence proves the defendant guilty beyond a
27  reasonable doubt, he is entitled to an acquittal and you must find him not
guilty,' is that a lack of evidence could lead to reasonable doubt. Contrary
28  to defendants' claim, CALCRIM No. 220 did not tell the jury that

reasonable doubt must arise from the evidence. The jury was likely 'to understand by this instruction the almost self-evident principle that the determination of defendant's culpability beyond a reasonable doubt ... must be based on a review of the evidence presented.' [Citations.]"

While this holding refers only to CALCRIM No. 220, it applies with equal force to defendant's objections to CALCRIM Nos. 200, 222, 223, and 3550. Indeed, despite defendant's claims to the contrary, nothing in the trial court's instructions to the jurors could be reasonably understood to prohibit them from using a lack of evidence to establish reasonable doubt. Accordingly, defendant's argument is without merit.

Second, defendant argues the trial court conveyed an insufficient burden of proof when it instructed the jury, pursuant to CALCRIM No. 220, that "[p]roof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true." According to defendant, "an abiding conviction" incorrectly states the People's burden of proof, as it goes only to the jury's duration of belief, not in its degree of certainty.

This argument, however, was explicitly rejected by the United States Supreme Court in *Victor v. Nebraska* (1994) 511 U.S. 1, 14–15, where the court held "[a]n instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof. [Citations.]" Similarly, the California Supreme Court upheld the validity of defining reasonable doubt in terms of "an abiding conviction" in *People v. Farley* (2009) 46 Cal.4th 1053, 1122. [FN2.] As we follow the decisions of courts exercising superior jurisdiction, defendant's argument must be rejected. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

> [FN2.] *Victor v. Nebraska* and *People v. Farley* dealt with CALJIC No. 2.90, not CALCRIM No. 220. However, both CALJIC No. 2.90, and CALCRIM No. 220 define reasonable doubt in terms of "an abiding conviction" in the truth of the charge.

White, 2015 WL 1261445, at *7–8.

   *b.  Legal Standard and Analysis*

The same standards set forth in Claim 4 above apply here.  As noted by the appellate court, Petitioner's claim that the language used in the instruction wrongly conveyed the burden of proof was explicitly rejected by the Supreme Court in White v. Nebraska, 511 U.S. 1, 14-15 (1994), which held that "[a]n instruction cast in terms of an abiding conviction as to guilt . . . correctly states the government's burden of proof."  In addition, the Supreme Court found that the instruction at issue properly informed "the jurors that their duty was 'to determine the facts of the case from the evidence received in the trial and not from any other source.'"  Id. at 13.  The Supreme Court did not state that an instruction on the absence of evidence was required.

   Moreover, the state court reasonably determined that the "only reasonable understanding

18

of the language, '[u]nless the evidence proves the defendant guilty beyond a reasonable doubt, he

is entitled to an acquittal and you must find him not guilty,' is that a lack of evidence could lead

to reasonable doubt." Based on the plain meaning of the language, there is no reason to conclude

that the jurors could have understood that they were prohibited from using a lack of evidence to

establish reasonable doubt. The claim is without merit and should be denied.

### 6.   Cumulative Error

Petitioner claims that the cumulative effect of the errors arose to the level of a

constitutional violation. "Multiple errors, even if harmless individually, may entitle a petitioner

to habeas relief if their cumulative effect prejudiced the defendant." Ceja v. Stewart, 97 F. 3d

1246, 1254 (9th Cir. 1996) (citing Mak v. Blodgett, 970 F.2d 614, 622 (9th Cir. 1992)); see also

Karis v. Calderon, 283 F.3d 1117, 1132 (9th Cir. 2002). However, the Ninth Circuit has also

recognized that where there is no single constitutional error, nothing can accumulate to the level

of a constitutional violation. See Rup v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996). In this case,

no errors occurred, and hence, there can be no cumulative error.

### 7.   Cruel and Unusual Punishment

Last, Petitioner alleges that his sentence constitutes cruel and unusual punishment.

*a.   State Court Decision*

The Fifth DCA rejected the claim as follows:

Defendant contends his aggregate sentence of 103 years to life constitutes unconstitutional cruel and unusual punishment, as it is grossly disproportionate to the crimes committed. We disagree.

As a preliminary matter, we note defendant did not raise his claim of cruel and unusual punishment before the trial court and, thus, the issue is forfeited for appeal. (See *People v. Ross* (1994) 28 Cal.App.4th 1151, 1157, fn. 8.) Even if the matter had been properly preserved, however, it must fail on the merits.

Cruel and unusual punishment is prohibited under both the federal and California Constitutions. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) This prohibition forbids punishment that "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.)

In order to determine if a sentence is disproportionate, we must (1) examine "'the nature of the offense and the offender, with particular regard to the degree of danger which both present to society,'" (2) "compare the challenged penalty to 'punishment prescribed in the same jurisdiction for other more serious offenses,'"

and (3) "compare the challenged penalty to 'punishment prescribed for the same offense in other jurisdictions.'" (*People v. Crooks* (1997) 55 Cal.App.4th 797, 806, quoting *People v. Thompson* (1994) 24 Cal.App.4th 299, 304.) We review questions of constitutional law de novo. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1154.)

Under the first prong, the nature of the offenses in this case—five sex crimes against a child committed over a period of several months—is undeniably heinous. Moreover, while the offender in this case had no prior record of sex crimes against children, he admitted to a prior conviction for robbery, a serious felony. Given the number and severity of the offenses in this case, as well as defendant's past criminal history, a severe sentence was certainly justifiable under California law. (See *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1510; *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231.)

Similarly, defendant finds no respite under the second prong of this analysis. While defendant argues his sentence exceeds the punishment given for offenses such as kidnapping and voluntary manslaughter, he fails to acknowledge the extreme length of his sentence was not due to one individual conviction, but rather five separate and serious offenses, sentenced consecutively. The imposition of sentences in excess of 100 years for multiple sex crime convictions has been upheld by the appellate courts of this state, as given "the outrageous nature of this type of offense and ... the danger that these offenses pose to society we cannot say that the imposition of consecutive sentences for multiple sex offenses shocks the conscience." (*People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 531; see *People v. Retanan, supra*, 154 Cal.App.4th at p. 1231 [sentence of 135 years to life for multiple sex offenses against minors not cruel or unusual punishment].)

Further, defendant's sentence was effectively doubled by his prior conviction for robbery, and "society is warranted in imposing increasingly severe penalties on those who repeatedly commit felonies." (*People v. Martinez, supra*, 71 Cal.App.4th at p. 1512.) Indeed, while defendant compares his sentence to a sentence for voluntary manslaughter, he fails to acknowledge a conviction for petty theft at the time he committed his offenses could carry a sentence of 25 years to life if preceded by a serious enough criminal history. (*People v. Romero* (2002) 99 Cal.App.4th 1418, 1431–1433.) Accordingly, given the number of charges defendant was convicted of, as well as defendant's past criminal history, defendant's sentence was not disproportionate to this jurisdiction's penalties for more serious offenses.

Finally, under the third prong, while sex offenders in California are "'subject to some of the longest sentences in the country,'" defendant has made no effort to show his sentence was disproportionate to the sentences he would be subject to in other jurisdictions. In fact, defendant acknowledges several other jurisdictions authorize similar sentences. As defendant bears the burden of establishing his punishment is disproportionate to the punishment he would face in other jurisdictions, his concession resolves this prong in the People's favor. (*People v. Crooks, supra*, 55 Cal.App.4th at p. 808.)

In spite of this analysis, defendant further asserts his sentence is unconstitutional as it greatly exceeds his life expectancy. California courts, however, have "repeatedly upheld" sentences which exceed the life expectancy of a defendant. (*People v. Retanan, supra*, 154 Cal.App.4th at p. 1231.) Defendant's sole authority in support of his argument, Justice Mosk's concurring opinion in *People v. Deloza* (1998) 18 Cal.4th 585, 600–601, carries no weight as precedent as it is not

1   supported by the agreement of a majority of the court. (*People v. Retanan, supra*,
2   at p. 1231.) Given the foregoing, we find defendant's punishment is not cruel or
    unusual and affirm defendant's sentence.

3   White, 2015 WL 1261445, at *9–10.

4       b.  *Procedural Default*

5       Like Petitioner's third claim, this claim is procedurally barred because Petitioner failed to

6   make a contemporaneous objection at trial.  Melendez, 288 F.3d at 1125; Vansickel, 166 F.3d

7   953.  In addition, he does not demonstrate cause or actual prejudice.  The claim is procedurally

8   defaulted and should be dismissed.

9       c.  *Legal Standard*

10      The Eighth Amendment provides that cruel and unusual punishments shall not be

11  inflicted.  U.S. Const. amend. VIII.  A sentence constitutes cruel and unusual punishment if it is

12  "grossly disproportionate" to the crimes committed.  Lockyer v. Andrade, 538 U.S. 63, 71 (2003)

13  (holding that a California state court's affirmance of two consecutive twenty-five-years-to-life

14  sentences for petty theft was not grossly disproportionate and not contrary to nor an unreasonable

15  application of federal law); see also Ewing v. California, 538 U.S. 11 (2003) (holding that a

16  sentence of twenty-five-years-to-life for theft under California's three strikes law was not cruel

17  and unusual punishment); Harmelin v. Michigan, 501 U.S. 957, 961 (1991) (mandatory sentence

18  of life without possibility of parole for first offense of possession of 672 grams of cocaine did not

19  raise inference of gross disproportionality); Rummel v. Estelle, 445 U.S. 263, 271 (1980).

20      Outside of the capital punishment context, the Eighth Amendment prohibits only

21  sentences that are extreme and grossly disproportionate to the crime.  United States v. Bland, 961

22  F.2d 123, 129 (9th Cir.1992) (quoting Harmelin, 501 U.S. at 1001).  When reviewing an Eighth

23  Amendment claim in a federal habeas corpus petition, the gross disproportionality principle is

24  "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable

25  application of' framework" under 28 U.S.C. § 2254(d)(1). Lockyer, 538 U.S. at 73.  The "gross

26  disproportionality rule" applies "only in the 'exceedingly rare' and 'extreme' case." Lockyer,

27  538 U.S. at 72–73; Rummel, 445 U.S. at 272.  So long as a sentence does not exceed statutory

28  maximums, it will not be considered cruel and unusual punishment under the Eighth Amendment.

21

1    See United States v. Mejia–Mesa, 153 F.3d 925, 930 (9th Cir.1998); United States v.

2    McDougherty, 920 F.2d 569, 576 (9th Cir.1990).

3        In assessing the compliance of a non-capital sentence with the proportionality principle, a

4    reviewing court must consider "objective factors" to the extent possible.  Solem, 463 U.S. 277,

5    290 (1983).  Foremost among these factors are the severity of the penalty imposed and the gravity

6    of the offense.  Id. at 290–91.  If "a threshold comparison of the crime committed and the

7    sentence imposed leads to an inference of gross disproportionality," the reviewing court should

8    compare the sentence with sentences imposed on other criminals in the same jurisdiction and for

9    the same crime in other jurisdictions.  Harmelin, 501 U.S. at 1005.  "Comparisons among

10   offenses can be made in light of, among other things, the harm caused or threatened to the victim

11   or society, the culpability of the offender, and the absolute magnitude of the crime ."  Taylor, 460

12   F.3d at 1098.  If a comparison of the crime and the sentence does not give rise to an inference of

13   gross disproportionality, a comparative analysis is unnecessary.  Id.

14       *d. Analysis*

15       The Court concludes that no inference of gross disproportionality appears from the present

16   record.  Petitioner was convicted of not one, but five "undeniably heinous" sexual offenses

17   against a young child.  These crimes included sexual intercourse, sodomy, and oral copulation.

18   These crimes are certainly more serious and purposively injurious than drug possession or petty

19   theft.  C.f., Harmelin, 501 U.S. at 957; Lockyer, 538 U.S. at 63; Hutto v. Davis, 454 U.S. 370,

20   370-71 (1982).  In addition, Petitioner admitted to being a recidivist offender, having sustained

21   multiple prior strikes and prison sentences.  Nothing in the record creates an inference of gross

22   disproportionality.

23       Accordingly, the state court determination that Petitioner's sentence did not constitute

24   cruel and unusual punishment was not contrary to or an unreasonable application of Supreme

25   Court precedent.  The claim should be rejected.

26   **IV.    RECOMMENDATION**

27       Accordingly, the Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be

28   **DENIED** with prejudice on the merits.

1         This Findings and Recommendation is submitted to the United States District Court Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

3    Local Rules of Practice for the United States District Court, Eastern District of California.  Within

4    twenty-one days after being served with a copy of this Findings and Recommendation, any party

5    may file written objections with the Court and serve a copy on all parties.  Such a document

6    should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies

7    to the Objections shall be served and filed within ten court days after service of the Objections.

8    The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

9    The parties are advised that failure to file objections  within the specified time may waive the

10   right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11

12   IT IS SO ORDERED.

13      Dated:   **July 19, 2017**           **/s/ Jennifer L. Thurston**

14                          UNITED STATES MAGISTRATE JUDGE